With both the attorneys that are going to present oral argument on this case, please step up to the podium and identify yourselves for the record. Good morning. Good morning. Meredith Barron from the Office of the State Appellate Defender here on behalf of Brian Brewer. Ms. Barron. Counsel. Good morning, Your Honor. Assistant State's Attorney John Walters for the people of the State of Illinois. Mr. Walters. All right. Each of you will have approximately 20 minutes to present argument, and from that, Ms. Barron, you may save out some time for rebuttal. All right. At least five minutes? Certainly. All right. With that, we will let Ms. Barron proceed. We should say Justice Gordon is also going to be participating in the opinion. He's just going to listen to the audio. Yes. Justice Gordon is not available today, and so there are actually two other cases, but he is sitting on two of them, and this is one of them. So he will fully participate. I apologize. All right. You may proceed. Good morning. Good morning, Ms. Barron. Once again, my name is Meredith Barron from the Office of the State Appellate Defender here today on behalf of my client, Brian Brewer. Your Honors, there is no question that the State proved Brian Brewer guilty, beyond a reasonable doubt, of the first-degree murder of Officer Flora Soderberg, a crime for which Mr. Brewer received an extended sentence of natural life. But what the State failed to prove was the charge-aggravating factor, that Officer Soderberg was in the courtroom in the course of performing an official duty at the time of his death. So is it your position, because there was extensive testimony that he was in uniform, the landscaper testified he was in uniform, the morgue testified that they received the body in his uniform, so is your position him being in uniform in the parking lot of the police station, that is not sufficient to show he was on duty? That's correct. Because when you have a case like this one, there's different aggravated factors that can be charged. There's performance of official duties, and there's retaliation. And what you're referring to and what the State refers to in its brief is retaliation. And since that is a separate and distinct aggravating factor, that cannot be used now to affirm Mr. Brewer's sentence on appeal, because in the 250-count indictment... Wait, okay, back up. Retaliation was the defense? Is that what you're saying? No, under the aggravating factors, there's three distinct aggravating factors that can be charged. The one that was charged here was that a police officer was killed in the course of performing his official duties. There's also that a police officer was killed in retaliation for his duties, and there's that a police officer was killed to prevent the performance of his official duties. And those are three distinct things that require distinct different facts to show that that happened. And to prove Mr. Brewer guilty of an aggravating sentencing factor, that has to be charged or presented to him in writing before trial to be the factor that can be found for his extended sentence. And here, within the 250-count indictment, the only sentencing factor selected and charged by the State was that Officer Soderbergh was a peace officer killed in the course of performing his official duties. And for that, it requires proof of an official duty that he had been performing. And at trial, the State failed to offer any evidence or even argument suggesting what that official duty was. What case says, if you will, what case says that the burden of proof requires the State to prove he was officially acting? Well, under Apprendi, Apprendi was codified within the form of the charge, which is 725 ILCS 5111-3C5. And that codifies that an alleged fact must be included in a charging instrument. Is it your position that the fact that he's a police officer in uniform, in the parking lot of a police district, is it your position, there's a lot of case law out there that says a police officer is always on duty. And is it your position that that is not correct? There is law that says a policeman is always on duty, but that case law doesn't stop there. In all of the cases, there's further proof of what that official duty was. And so the idea that a police officer does have a constant duty... Let's forget for a moment that he was, you know, going to be off in another 45 minutes, all right? Are you suggesting that because there wasn't any testimony about what he was specifically doing when he was changing his shirt or something, that the rational trier of fact couldn't find that he wasn't acting in his official capacity? Yes. All right. This is a sufficiency of the evidence charge only. You're only alleging that there's no proof under the rational finder fact. Couldn't find. Correct. So we would be viewing this in the light most favorable to the state. That is correct. It is in the light most favorable to the state. But the idea that somebody, the police officer who's off duty and is wearing his uniform, the idea that that alone is sufficient goes against... Off duty or on duty? Did you mean to say on duty? I thought you just said off duty. I did say off duty. He was technically off duty. But even if you're on duty... Where in the record is there any indication of any kind whatsoever that this man was off duty? There is his partner, Phil Visor. Said he was going to a softball game at 5. Right. And that he had left work one hour early to go to the game. And he was in the process of unbuttoning his uniform at the time. But whether he was off duty or on duty, the statutory language does say that you have to find that there was an official duty. All right. Going to the facts in this case, let's assume that this person, there was testimony that he didn't have his shirt on. Do you remember that? Mr. Bird? Yes. Correct. Okay. And then was his testimony at trial something about how the officer pulled him by the shirt? It was. All right. So there's conflicting testimony right off the bat. Then an eyewitness across the street says, the guy has no shirt on. Okay. And then we've got someone else, well, the defendant saying, I had my shirt on and the guy pulled me. All right. That somebody pulled him from behind and then they struggled with the gun. Are you saying that if a police officer in any way is involved in an altercation, regardless of who starts it, that that is not acting in the official duty? Yes, because, again, it goes to the language of the statute, where it says that the state was required to prove more than just an officer's status as a policeman. Otherwise, the legislature would have made it that killing each officer. Even when he's on duty, you've got to show that it's more than just being a policeman. You've got to show he's actually out there doing police duties? Yes. Is that your position? So a police officer who's at the police station working behind the desk, somebody comes in and shoots him dead, that's not sufficient? It would need to be shown that it was official duty. So if he was drinking coffee, that's not sufficient? That's not an official duty. He's just sitting there. In that example. But that's what you're arguing, Ms. Barron, is it not? That you have to show he is out there slapping the cuffs on somebody in order for this enhancement to apply? Well, it is our argument, but it's also our position that in this case, Officer Soderberg was off duty. And when someone's off duty, there would still then have to be more proof of what an official duty they were performing. So even under the defendant's own testimony that he was trying to scale the fence of the police parking lot and Officer Soderberg pulled him back. So how is that not an official duty if he's trespassing in the parking lot? Wouldn't that be an official duty right there according to the defendant's own version of events? Well, there's two parts to that. The first is that the trial court did not find anything that Mr. Brewer had said to be credible and did not attribute. So weren't you ignoring it as well? We do not have to ignore it. We can attribute credit to it even though the trial court did not. We're looking at a rational finder fact. We never, ever, ever consider what the trial court said or did. True. It's not the standard approach. True, and it is a rational finder fact. All right. But the evidence, including Officer Soderberg's rules, do not support Mr. Brewer's testimony. They found that he was shot in the back, after which he was shot twice. In close range. In close range. So the idea that he started this altercation to prevent the trespassing was just insufficient proof in the record of that. Well, what about circumstantial proof that the defendant was walking down the street screaming and yelling about he was going to shoot somebody? Didn't an eyewitness talk about that? I think it was a little bit more colorful language than that. We'll let you read that. We're not saying it. Okay. But so if someone actually attacks the officer, okay, does he have, is he in the line of duty if he's trying to stop an attack? So the idea, the colorful language that you speak of, that would go, again, towards retaliation, not necessarily defamation. I don't think the word retaliation is in your brief. It is in the reply brief because that is. But under 341, are you allowed to do that? Are you allowed to? Well, it is because it's in response to what the State had argued. The State had argued specifically. The State argued something about retaliation? Well, the State argued what you're suggesting now, which is that when you attack a police officer by virtue of him being a police officer, that that is sufficient to prove official duties. And my point is, is that that actually is a distinct aggravating factor. This notion of retaliating is different. But technically speaking, number one, you never, ever mentioned this in your opening brief, that this is more of a retaliation situation. And two, 341 does not allow you to raise things for the first time. I understand what you're saying. You're saying this was actually a reply to their response. I'm not quite sure about that, that it's a response in any way to their position that they, that the State proved that any rational trier of back could have found the elements of him acting in official duties. But if a police officer, first of all, there's circumstantial evidence that not only did he shoot at this officer, but then he went on a tirade at shooting at other officers and another person. And you're saying a rational trier of back couldn't find that he actually started an attack on the officer. That's dead. No, that's not what I'm saying. But if that were the case, if the finder of fact concluded that there was substantial circumstantial evidence that he was shooting everybody in sight, wasn't that officer required to defend and take action to prevent the commission of a crime? Well, the first part to that is there's a lot of focus that we're doing on Mr. Brewer's actions. And for the sentencing enhancement, it's actually to, we have to look at what Officer Soderbergh was doing. And even if Officer Soderbergh had a theoretical duty to thwart the attack or make an arrest, there's simply insufficient evidence that he actually performed those duties in this case. And since there's insufficient proof that Officer Soderbergh's response was an official duty, we don't know that it was him performing an official duty rather than an instinctive attempt to defend himself. Well, isn't there an actual case? Maybe you're not familiar with it. But I'll reference it right now. Banks v. The City of Chicago. In that case, the court found that it is true that his being considered on duty, referring to a Chicago police officer who shot someone, at all hours of the day and night does not result in all of his acts being deemed to have been taken in the performance of his duties as a police officer. However, since he is always obligated to attempt to prevent the commission of a crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer. So off-duty police officers also, like you're saying he was off-duty. He was not even working. There's obviously enough evidence to support the state's contrary position. But case law in Illinois says that even officers who are off-duty, so let's assume that Soderbergh was off-duty. The case law in Illinois absolutely requires that he do something to prevent the commission of a crime. And that is his obligation as a police officer. That case doesn't actually show that we're incorrect here, though, because what that case is saying, we agree with. The idea that a law enforcement officer has a duty to maintain public order, we're not disagreeing with that. Doesn't he have a right to act in self-defense if somebody attacks him? He does. And if he does that act in self-defense, is he acting in his official capacity because a crime is about to be committed upon? And that's where I don't think that that can be automatically said. And the reason for that is. . . And that no rational trier could have found that in this case. Yes, because while we're not in any way attempting to undermine Officer Soderbergh's actions in this case, but if it is automatically considered an official duty whenever an off-duty officer is victimized and attempts to defend himself, then effectively it becomes an aggravating factor to kill a police officer by virtue of his profession. Does your position really hold if there's a rational trier back that finds he was actually working, just like any other cop? It does. Because there's still insufficient proof in the record of what happened during this attack. And what the evidence does show is that Officer Soderbergh was effectively blindsided by Mr. Brewer, disarmed, robbed, and shot. And there's simply insufficient proof in the record that any action was undertaken that can be considered an official duty. And since that's what the statute requires, here in this case there was insufficient evidence that that occurred. All right. Did you wish to add more before wrapping up? I would just say that unlike the cases cited by the state, in every single case cited by the state, there is direct evidence of what this official action that the officer was doing when he was injured, what it was. In Bates v. State, in Regional L, in all of these cases. What is your case, though? What is your primary super case that you're relying on to tell us that a rational trier back couldn't find that this officer was actually performing duties? Much like many reasonable doubt cases, our case is the facts of our own case and applying the law. Yeah, but what case about a police officer acting blind? Give us something we can hang our hat on so we can write this to reverse. What is there, what case do you have that's so persuasive that involves an officer that says, hey, he wasn't working, he wasn't in the line of duty, he wasn't performing anything, he was on a frolic. And actually he wasn't even trying to defend himself. What police case can we use to do that? I don't have a case that I can cite that's that persuasive in that way, but what I can say. Do you have this officer case, though? I don't, but I do have the facts of this case. And when you compare them to every other case, every other case where it has come out that an official duty was being performed, there's direct evidence that the officer was intentionally, intentionally responding to stop a crime in progress. And it is that that distinguishes every other case from the facts of this case. Well, we'll give you some time for rebuttal.  All right. You're welcome. May I please the court? What's the evidence that he was actually? We let you go. May I please the court now? What's the evidence, Mr. Walters, that he was performing official duties? Well, for one thing, besides being a police officer in uniform on a police parking lot, confronted by a man on a mission to kill, shoot, maim, hurt anybody he came in contact with, including police officers, there was testimony that he was trying to seek entry into the police station at 61st and Racine. And it was only after he was unable to do that that he entered into the parking lot, came upon the officer who had just put his gun belt into the back of his car. And in addition to all that, you know, the fact doesn't really talk about this, but it's not like Officer Silverberg was going off to North Avenue Beach to play beach volleyball to blow off some steam. Well, even if he were, though, is he still obligated to try to prevent crime if it comes his way? Absolutely he is. Absolutely he is. But I just want to say, where he was headed was a police academy where he was an instructor. So the fact that he's playing a volleyball game at the police academy where he's an instructor, where he's held by department rules to a certain standard of conduct, where he's going to have to conduct himself in a certain way, even though it might be partly recreation, he's also keeping himself fit, he's also on police premises at the very place where he is duties, active assigned duties. But even assuming, we'll throw all that out, even assuming argumentum, that somehow Officer Silverberg was off duty at this point, the law is quite clear. And it's not just the law of Illinois, it's a law that's echoed throughout the East, the South, the West, the Midwest. I've cited cases from all over the country that resonate the same principle, that an officer has a duty at all times to maintain public order. And when confronted with somebody, as I mentioned, this defendant dropping F-bombs, talking about who he's going to shoot, trying to make entry into a police station. Several bystanders, by the way, heard this. He didn't have a gun, though, isn't that correct? The weapon that was used was actually Officer Soderberg's gun. Right. So he was just walking down the street and, you know, ranting and raving, whatever he was doing. What crime is he committing then? Other than being obnoxious, which I'm not, yeah. Right. At that point, all of this goes to intent. You know, defense makes a strong argument that we're taking a position that somehow this comes under the retaliation element. I want to make that abundantly clear. We're not arguing that. We're arguing, as I set forth in the brief, that Officer Soderberg was killed in the course of performing his official duties. Was there any video of the interaction between Soderberg and Mr. Brewer? Unfortunately, there was minimal. There was a sheer min-fee. Doesn't that shock you? It's unfortunate. The technician went out the next day to try and find out what the problem was, and it was apparently a faulty port. The wire was fine, the camera was fine, but when he connected the wire to a different port, there was no problem. Which is, I'm sorry, I'm dragging you through a radical. So go back to your argument. Back to the point, though, the evidence was overwhelming. It was ample that the officer was faced with somebody who was committing criminal activity. In fact, the defendant in the required brief, pages 2 and 5, essentially concedes that the defendant was committing crimes in the officer's presence. So the only issue I think the defendant can possibly raise or is trying to raise is that somehow the officer standing in there and being a victim of this crime somehow doesn't translate into acting in the course of his official duties. Is there any real solid case law that would even suggest for a moment that when officers are working, you know, whether it's the midnight shift or not, whether they're having a donut, which I love, and coffee, is there any case law that would suggest that those officers aren't performing their duties just because they're having a cup of coffee? That we should suddenly say, hey, you know, if you're shot, so what? Is there any case that suggests that when officers are on duty, that they aren't really acting in their official capacity, even if they're, you know, taking a break? You know, that's precisely the reason I started the Kentucky case. It's exactly what you're talking about. In the Kentucky case, the sheriff was at a fish fry. The fish fry was organized for, it was an electoral meet and greet, meet the electorate. It was essentially, the purpose of it was for the sheriff to help get himself elected. That was the main purpose of it. And as he was shot, he was taking cakes that he purchased from the fish fry to the trunk of his car. Now, the court there still found that he was acting in the course of his official duties. Why? Because they said the fact that he was there for some other purpose, in addition to the fact that he was on duty, really is irrelevant. The fact is he was on duty. Just as an example of the officer that's sitting at the desk, you know, people walk in for a complaint. I mean, you would probably agree, and perhaps opposing counsel would agree, that if an officer's at a desk and, you know, taking some information, that might fit the bill. But is there any case law that really would suggest that officers that are working, you know, whatever, in the parking lot, you know, that that is not acting in their official duties as long as they're on the clock? I'm not aware of any case law that says that. In fact, all the cases that I cited in my brief said the opposite. That when an officer is on duty or when an officer is even not on duty, is working a private job, is working as a security guard at a hospital in the Salt Lake City case, is working as a, I guess, essentially as a bouncer at a restaurant, in the case I cited from Mississippi, from Mississippi's Supreme Court. In the case of Joel Allen, where the officer was, I guess, a school security guard, and he confronted a defendant who attacked him. All these cases are cases where the officers are off duty. They're working some sort of private employment. And they're being attacked by the defendant. And in all of those cases, the courts say that there's a trigger. There is a change in the officer's role. The officer's role goes from being whatever it was before the moment that the officer was attacked to the officer is acting in the police force. But doesn't that go to counsel's argument, then, that you kind of make it, the police officer is always a police officer, and this enhancement always applies, so why even put in there that it's while on duty or in his official capacity? Why even put that language in there if our position is an officer is always an officer? I want to be very clear about this. Justice McBride just cited Banks. And Banks, I think, states the law very eloquently. The mere fact that an officer is on duty does not mean that you transform every act that the officer does into the course of official duty. It doesn't transform it all by itself. There's a trigger, and that's what I was bringing up with respect to the Salt Lake City case, the Mississippi case. There's a trigger. In this case, the trigger is criminal activity in the presence of the officer. So it's not simply a case that... So wouldn't that be shooting the officer is a criminal activity, and so therefore the mere act of shooting the officer has converted him into official duty? I don't know particularly about that case. I did not find a case that says specifically that. I would say that in this case, though, there's far more than that. And one of the things is an ipso facto thing. One of the crimes that the defendant is charged with is robbing the officer, disarming the officer of his gun. There is undisputed testimony that the officer fought for possession of that gun. By the very fact, ipso facto, that he was fighting for possession of that gun, he was thwarting the commission of a crime. Therefore, he was acting in the course of his official duties. What did the defendant, though, say in regard to that? He testified. He himself said that there was a struggle over the gun. There's no dispute that there was a struggle over the gun. By the very fact that there was, and it's undisputed, this element has been proved beyond a reason without. Really, we don't need to talk any further than that. That really establishes, but it's not the only bit of evidence that shows that. I think one of the most telling things is the defendant's testimony itself. It's filled with lies. The judge, in distilling the evidence of the case, said that the defendant's testimony at one point was an unmitigable lie. And it's just filled with lies, except for a couple of nuggets of truth. And one of the nuggets of truth that goes to this very point is he says, the defendant himself says, I wanted his ass to be dead because he made me shoot him. He made me shoot him. Again, there's more here than an officer who's just a patsy standing there passively and having some sort of crime committed on him. This officer stood in there. He had multiple wounds. He had 10 discrete wounds to his body, independent of the gunshot wounds. This was a fight. He was in there. He was attempting to thwart a physical attack on himself. He was attempting to thwart the defendant from stealing the gun from him. He was absolutely engaged in the performance of his duties. He was in the line of duty when he was shot in this case. Defending himself even says it. And, again, one of the nuggets in this case of truth from the defendant's testimony is that he was proud to be a cop killer. He knew that this officer was a cop. He knew that this officer was attempting to stop him from his crime spree. The officer did the best that he could, and, unfortunately, he died in this case. There's a public policy that underlies our position, that underlies all these cases, that underlies the principles of law that come down from our Illinois Supreme Court in the case of Arrington and Banks. I don't believe it's an Illinois Supreme Court case, but the same policy underlies it, and it protects police officers, it protects the public, and it protects defendants. It really protects everybody. And that notion is that, well, not every act that an officer does is official duty. When an officer is acting in official duty, when a defendant is committing crimes in his presence and the officer acts in the course of his official duty to thwart those crimes, even though the officer may or may not be on duty, obviously we as a society benefit by having officers respond to situations, even if they're off duty. We benefit from that. Police officers benefit from it because if they're confronted with a situation where somebody is attacking them and it's a desperate situation with a fight for their life on the line, the officer is really in the best position if that officer maintains the mindset, falls back on his or her training, and goes into the mindset that maintains a professional demeanor and treats the defendant in a professional way at all times, even though it's a desperate fight for his life, his or her life. If he or she is relying on their training, they're in the best position they can possibly be. And the defendant is also protected. The defendant here, Sergeant Kaczynski illustrates this perfectly. He took him down with one shot. Didn't kill him. It wasn't a kill shot. Sergeant Kaczynski stopped this defendant in his tracks, stopped him from his crime spree. But it took him down with one shot and it didn't kill him. Did the defendant say, well, what did he say about the gun and how he ended up having the gun? Or did he say it was like it went off because he was after it? Yeah, he said that. He said there was a struggle for the gun. And, again, his testimony was filled with lies. His lie was, among others, was that somehow in the course of the struggle for the gun, he didn't even pull the trigger. Somehow the trigger got pulled. Apparently it was Officer Sullivan. What did he say about the shot in the back? Or didn't he? He only said there were two shots when there were three. He said that the first shot was to the officer's face. That was a lethal shot, by the way. It went right to the officer's brain. Yeah, there was testimony from the PFO. Yeah. So there's no way that that set of circumstances the defendant's testifying to could have possibly been the truth. Not in a million years. It's completely undermined by the medical examiner's testimony in this case. Anything further you want to add, Mr. Walters? Just with respect to the statute-wise stuff, we don't even need to reach that because this element was proved beyond a reasonable doubt. Assuming arguendo that you did, the people's position is that a straightforward reading of those statutes would show that, first of all, natural life is not a term of years. It's a compound sentence. Under People v. Terry, it can't possibly be an extended term. I don't want to belabor the point. The argument set out in my brief, as well as the statutes that govern. With that, people respectfully request that this Court affirm defendant's conviction and sentence, mandatory natural life sentence in this case. Thank you. Ms. Barron? Thank you. The State's conclusion that Officer Soderbergh was attempting to thwart a crime spree is speculation. And it's speculation that, again, distinguishes this case from every other case cited where there is direct evidence of an intentional attempt to thwart a crime. And here, the State's focus is on Mr. Brewer's testimony, Mr. Brewer's actions. In fact, the State actually went describing this case and says that Mr. Brewer took Soderbergh's service pistol, robbed and disarmed the officer, and subsequently he killed the officer with the officer's own weapon. Nothing in there, nothing in that description of the events in the description of Mr. Brewer's actions, none of that describes what Officer Soderbergh was doing. And the statute requires proof not of Mr. Brewer's actions, but of Officer Soderbergh's actions. And here, there is simply insufficient evidence that Officer Soderbergh was performing an official duty at the time of this unprovoked, sudden, and tragic crime. Therefore, we ask for the relief requested in our briefs. Thank you. Thank you. I take the matter under advisement. It was well argued and well briefed. Now we'll call the next case. Oh, we have to switch panels, so we'll take a short recess for that purpose.